Burks, J.,
delivered the opinion of the court.
This is a writ of error to a judgment of the hustings court of the city of Petersburg.
The plaintiff in error was one of the defendants in an action of debt brought by the Southern Express Company on a bond, with condition, of the tenor following:
“ $2,000.
“ Whereas, Hugo G. Evans is to be hereafter employed by the Southern Express Company, in its business of forwarding by different railroads, steamboats and other kinds of conveyance, packages of any and all kinds, and movable property, including money and securities for money:
“ Now, therefore, know all men by these presents, that I, the said Hugo G. Evans, in consideration of said employment and of the compensation which I am to receive from said company for my services therein, do hereby covenant with said company, and bind myself, my heirs, executors and administrators, that I will at all times well and truly perform all the duties required of me in said employment, and well and truly account for all money and property of every description which may come into my possession or control, by reason of said employment, and make good all loss or damage which may happen to such *720 money or property while under my control, for which I may be legally responsible; and indemnify and save harmless the said company from all liability on account of my fault or neglect. And for the faithful performance of the foregoing covenants, I, the said Hugo G. Evans as princ*Pa^ and T. T. Broocks, It. W. Collier, as his surety, do hereby, jointly and severally, bind ourselves, our heirs, executors and administrators, to the Southern Express Company aforesaid, in the sum of two thousand dollars.
“In testimony whereof, we hereto set our hands and seals, this eighteenth day of March, 1872.
“Hugo G. Evans, [Seal.] “T. T. Broocks, . [Seal.] “ Robt. W. Collier, [Seal.]
“ Witness:
“ A. W. Archer,
“ V. Johnson.”
The declaration alleges, that after the date of the bond, Evans was employed by the plaintiff in the business described in the bond, and as such employee, on the 22d day of December, 1874, and on divers days thereafter from time to time, received from the plaintiff’, in due course of his employment, sundry packages of money specified for delivery to certain persons named, which he failed and neglected to deliver and has never delivered, as was his duty to do according to the course of his employment.
The principal defendant Evans made a formal defence, Broocks had judgment in his behalf on a plea of bankruptcy, and Collier (the plaintiff in error here) alone contested the plaintiff’s right of recovery on the merits, the defence relied on being presented by two special pleas filed jointly in the names of himself and Broocks as sureties.
We perceive no difference in the two pleas. They aver, in substance, that according to the true intent and meaning of the bond declared on, the said defendants were *721 bound, and only bound, for the faithful performance of the duties required by the plaintiff of the principal, Evans, in the employment had in view by the parties to the bond the time it was entered into—to wit: for the faithful performance by Evans of his duties as freight clerk of the plaintiff; that while the said Evans was so employed as freight clerk, he kept and performed the condition of the bond faithfully in all respects, and committed no breach of said condition; that on the 1st day of September, 1874, the plaintiff, without the consent of the defendants or either of them, raised the said Evans from the employment of freight clerk to the higher and more responsible •employment of agent, the duties and responsibilities of which latter employment were far greater, and the risks of loss far graver, the pay of which was larger and the temptation to peculation more serious, and the usual bond required was in a larger penalty, and that in said last-named employment the said defendants never agreed or contemplated becoming sureties under and by virtue of the bond sued on.•
And they further aver, that the defaults alleged in the •declaration occurred while Evans was employed as agent •as aforesaid, and not while he was employed as freight clerk, and that therefore they are not liable for such defaults by virtue of said bond and the condition thereof.
There was no conflict in the evidence given on the trial, and it may therefore be taken as true. Briefly stated, the proof was to the effect that at the time the bond was given Evans was, and had been for some time previous, in the plaintiff’s employment as freight clerk, in which service he •continued, without committing any default, until 19th of November, 1873, when he was assigned to duty as acting principal agent at Petersburg, and on the 1st day of September, 1874, he was assigned to duty as principal agent •at said city, in which capacity he served until July 29, 1875; and that during his employment as such principal *722 agent, of the funds which came into his hands as such agent he embezzled various sums of money, amounting in • the aggregate to $868.68, which he never accounted for to the parties entitled thereto; that the duties and responsibilities imposed by the plaintiff upon its employees were varied and diverse, their duties, responsibilities and pay were different, and the penalties of bonds required of them were regulated by the nature of the duties and responsibilities imposed; that the duties of the freight clerk involved the handling of packages of money and valuables, and, in the absence of the principal agent, as was occasionally the case, he filled the office and discharged for the time the duties of the principal agent, and even when said agent was present, but otherwise employed, the said Evans, as freight agent, was authorized to receive and did receive and receipt for packages of money or goods delivered to the plaintiff for transportation. It was further proved, that it was and is the custom and usage of the plaintiff to assign its employees to the performance of such duties as may be deemed proper, and not to engage them in any particular capacity, and that the bond sued on is in its terms precisely like the bonds taken from all its employees since the year 1867.
After all the evidence had been given, instructions to the jury were asked for on both sides, and the court, rejecting those tendered by the defendants, on the motion of the plaintiff, gave the following: “If the jury believe, from the evidence, that Hugo G. Evans, while he was in th'e employment of the plaintiff in its business, and after the execution of the writing obligatory in the declaration mentioned, received in due course of his said employment the money, goods, or property in the declaration mentioned, to be forwarded or delivered to the person or persons to whom the same were directed, and that he failed to forward or deliver the same, and has failed to account for the same to the plaintiff, and to indemnify and save harm *723 less said plaintiff from all loss and liability on account A . . . said failure, then the said defendants are liable to the plaintiff for the amount or value of said money, goods, and perty so received, but not forwarded or'well and truly accounted for by the said Hugo Gr. Evans.”
The defendants, by counsel, excepted to the giving of this instruction, and also to the refusal of the court to give the instructions asked for by them. The plaintiff had a verdict, which the defendants moved to set aside, on the ground that it was contrary to the law and the evidence. The motion was overruled, and the defendants again excepted. There was judgment for the plaintiff, according to the verdict; of which judgment the defendant Collier, as plaintiff in error here, is now complaining.
It must be conceded that if the instruction given was proper, the verdict of the jury was plainly right; for the facts on which the liability of the defendants depended, under the direction of the court, as we have seen, were fully and clearly proved.
The question then is, was the instruction proper? We think it was. It assumed, and, in our opinion, rightly assumed, the construction of the obligation sued on, and the construction given was correct.
The rule, as laid down by Baron Parke in Neilson v. Harford, 8 Wees. & Welsb. 806, 823, is generally accepted. “The construction of all written instruments,” he says, “ belongs to the court alone, whose duty it is to construe all such instruments as soon as the words in which they are couched, and the surrounding circumstances, if any, have been ascertained as facts by the jury; and it is the duty of the jury to take the construction from the court, either absolutely, if there be no words of art or phrases used in commerce, and no surrounding circumstances to be ascertained'; or conditionally, when those words or circumstances are necessarily referred to them. Unless this were so, there would be no certainty in the law, &g. See also *724 Brown’s Leg. Max. 104, (side p.); 1 Chitty on Contracts, (11 Amer. ed.), 103; Talbot v. R. & D. R. R. Co., 3 Va. Law Journal, 483, 485; 31 Gratt. 685.
There is nothing obscure, equivocal or ambiguous in any of the terms employed in the instrument, which was the subject of construction in the present case. There are no terms of art, or science, or words of a technical nature or peculiar import, but the whole writing is couched in the plain language in common use. As the evidence was not conflicting, the surrounding circumstances relied on may be accepted as facts established, in like manner as if found by the jury. It was the province of the court to construe the bond in the light of these facts, but the construction was limited, by the rules of law, to the language employed in the instrument. “The writing,” says Greenleaf, “may be read by the light of surrounding circumstances in order more perfectly to understand the intent and meaning of the parties; but, as they have constituted the writing to be the •only outward and reliable expression of their meaning, no ether words are to be added to it, nor substituted in its ■stead. The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words expressed; but what is the meaning of the words they have used." 1 Greenl. Ev. § 277. See also what is said by Abbott, C. J., in Beuumont v. Field, 18 Eng. C. C. L. R. 334, and by Parks, J., in Doe v. Templeman, 24 Eng. C. L. R. 336, 343.
Ordinarily, a reference to what are called “ surrounding circumstances,” observes Mr. Justice Strong in a recent •case, is allowed for the purpose of ascertaining the subject ■matter of a contract, or for an explanation of the terms used; not for the purpose of adding a new and distinct •understanding. Maryland v. R. R. Co., 22 Wall. U. S. R. 105, 113.
Applying these principles, we are of opinion that the *725 learned judge of the hustings court rightly construed the obligation of Evans and his sureties as extending to employment generally in the business of the plaintiff. language of the bond is, “ Whereas Hugo G. Evans is to be hereafter employed,” &c. How “employed”? It is not said that he is to be employed specially as freight clerk, or as messenger, or as principal agent, or as acting agent, or in any particular capacity, but that he is to be “ employed by the Southern Express Company”—that is, generally “ in its business,” which is described to be that of “ forwarding by different railroads, steamboats and other modes of conveyance, packages of any and all kinds, and movable property, including money and securities for money; and the condition of the bond relates to “said employment.”
How, if the construction of the plaintiff in error is to prevail, the undertaking by the bond was limited to the employment of Evans as “ freight clerk.” It is necessary to that construction to add a new term to the writing, and thus the “surrounding circumstances,” established by parol evidence, would be made to serve the purpose, not of explaining the language used, but of adding words, the effect of which would be to essentially alter or vary the obligation, and create a different undertaking; which would be inadmissible.
The question in the case is not one of mistake, or fraud, or deception, or anything of the kind, but of construction merely; and we are of opinion, for the reasons stated, that the court below did not err in its rulings on the instructions, or in refusing a new trial, and that the judgment complained of should be affirmed.
The action was on a parol obligation. Judgment was rendered for the sum found by the jury and for costs. Regularly, the judgment should have been for the penalty to be discharged by the payment of the principal sum and *726 interest found by the jury, and costs. But the error is formal merely. The judgment might be amended, and, as amended, affirmed; but it is substantially correct as it is, and there is no necessity of changing the form of it.
Judgment appirmed.